UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| SALAHADDIN AYYOUBI, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| vs. ) | Case No. 4:10-CV-1881 SNLJ |
| ) | |
| ERIC HOLDER, et al., ) | |
| ) | |
| Defendants. ) | |

**MEMORANDUM AND ORDER**

Salahaddin Ayyoubi immigrated to this country as a refugee from Iran on May 27, 2003. He applied to the United States Citizenship and Immigration Service ("USCIS," formerly known as the Immigration and Naturalization Service, or "INS") for a change of status from "refugee" to "permanent resident" on March 30, 2006. Ayyoubi's application was initially denied, then reopened, then placed on indefinite hold on April 28, 2008. Ayyoubi's application remains on hold now, three years later. Ayyoubi brought this lawsuit seeking a declaratory judgment that he is eligible for adjustment of status and that the defendants' failure to adjudicate his application violates United States statutes and the Constitution, or enjoining defendants from further delaying their decision and requiring adjudication within 30 days.

Defendants Eric Holder (in his official capacity as the Attorney General of the United States), Janet Napolitano (in her official capacity as Secretary of the Department of Homeland Security), Alejandro Mayorkas (in his official capacity as Director of the USCIS), Marilyn Wiles (in her official capacity as Director of the Nebraska Service Center for the USCIS), and Donald Neufeld (in his official capacity as Chief of Service Center Operations for the USCIS) have

moved to dismiss or, in the alternative, for summary judgment (#15). Plaintiff moved for summary judgment (#20). Responsive memoranda have been filed, and this matter is now ripe for disposition.

I.   **Background**

The undisputed facts are as follows. Plaintiff is a Kurdish refugee from Iran. On May 23, 2003, INS, now known as USCIS, granted plaintiff refugee status after finding that he, as a member of the Kurdish Democratic Party of Iran ("KDPI"), had a well-founded fear of future persecution by Iranian Intelligence authorities. Plaintiff moved to St. Louis (where he now resides) and on March 30, 2006 filed his I-485 Application seeking an "adjustment of status" to "permanent resident" (a process colloquially known as obtaining a "green card"). On February 26, 2008, USCIS denied plaintiff's Application because he had allegedly provided "material support" to and received "military training from" the KDPI, which USCIS concluded was a Tier III "terrorist organization" as defined by 8 U.S.C. § 1182(a)(3)(B)(vi). USCIS determined that plaintiff was therefore statutorily ineligible for adjustment of status for "engag[ing] in terrorist activity." Then, on April 26, 2008, USCIS notified plaintiff that it had reopened his case and vacated its February 26, 2008 decision. USCIS also informed Mr. Ayyoubi that it was putting his case on hold pursuant to USCIS national policy, and that "[n]o further adjudicative action [would] be taken at [that] time." Defendants maintain that plaintiff is inadmissible "to the United States for having received military-type training" and for "engaging in terrorist activity as...defined by 8 U.S.C. §1182(a)(3)(B)(iv)(VI) (material support)." They admit that "background and security checks are not causing delay in adjudication in this case." Instead,

2

defendants are waiting "for formal policy guidance that takes [plaintiff's] case out of 'hold-in-abeyance status.'"

Plaintiff denies that he engaged in any terrorist activity and that the KDPI is a terrorist organization. As part of his refugee application process, plaintiff fully disclosed to INS his membership and activities with the KDPI. INS had to determine whether plaintiff was "inadmissible" to the United States pursuant to 8 U.S.C. § 1182(a)(3)(B), which specifies the terrorism-related inadmissibility grounds. Plaintiff alleges that INS thus determined that none of the provisions of Section 1182(a) barred his entry to the United States at that time, but defendants aver that "the grounds of inadmissibility that applied in 2002 were not noted by the officer who granted refugee status" to plaintiff.

However, USCIS later determined that, due to plaintiff's having provided material support to and received military training from the KDPI, which is a Tier III undesignated terrorist organization as defined by the Immigration and Nationality Act ("INA"), he is now inadmissible unless he receives an exception. The Secretary of the Department of Homeland Security has discretionary authority to exempt certain Tier III groups or individuals where appropriate; although KDPI is not included in the current list of exempted groups, plaintiff could potentially be exempted in the future. Certain other refugees who provided material support to and received military training from the KDPI have received exemptions, been granted permanent residence, and, in some cases, have become United States citizens.

Plaintiff states that he has long desired to be a citizen of the United States, but he cannot start on the path to citizenship until he is a permanent resident. Furthermore, he says he cannot travel internationally because he worries that he would be denied re-entry to the United States

3

given his precarious status — particularly in light of the fact that the USCIS has now determined that his association with the KDPI rendered him "inadmissible" into the United States. He also desires permanent residency status because he wants to join the United States Army, which requires that he be a permanent resident. Finally, plaintiff says that friends and family are suspicious as to why his application for permanent residency has been pending for so long, especially because other men in his position — who have similarly provided assistance to and received military training from the KDPI — have been granted permanent residency and, ultimately, citizenship.

Thus, on October 6, 2010, plaintiff filed this action seeking (1) a declaratory judgment that he is eligible for adjustment of status pursuant to 8 U.S.C. § 209; (2) a declaratory judgment that defendants' failure to adjudicate plaintiff's I-485 Application violates 8 U.S.C. § 1159, 8 C.F.R. § 209.1(e); the APA, 5 U.S.C. §§ 555(b) and 706; U.S. obligations under customary and treaty-based international law, and the U.S. Constitution, Amendment V; (3) in the alternative, a declaration that, even if the KDPI is a Tier III terrorist organization, INA 212(d)(3)(B)(I) does not prevent defendants Napolitano and Holder from considering his case for an individualized exemption, and enjoin defendants from further delaying review of plaintiff's case for such an exemption; (4) an injunction preventing defendants from further delaying a decision on plaintiff's I-485 Application, ordering defendants to adjudicate Plaintiff's I-485 on or before 30 days from the Court's judgment in this case, and ordering defendants to promptly inform plaintiff and the Court of such decision; and (5) that the Court retain jurisdiction during the pendency of the above relief orders to ensure compliance by defendants. Plaintiff also seeks reasonable attorneys' fees and costs.

Defendants have moved to dismiss for lack of subject matter jurisdiction, and, in the alternative, they seek summary judgment on plaintiff's claim that defendants have unreasonably delayed his Application. Plaintiff also moved for summary judgment, seeking an order that defendants had unreasonably delayed his Application and requiring immediate adjudication.

## II.    Legal Standard

### A.    Dismissal for Lack of Subject Matter Jurisdiction Under Fed. R. Civ. P. 12(b)(1)

The Court may dismiss a complaint for lack of subject matter jurisdiction under Federal Rule of Civil Procedure 12(b)(1). "Dismissal for lack of subject matter jurisdiction will not be granted lightly. Dismissal is proper, however, when a facial attack on a complaint's alleged basis for subject matter jurisdiction shows there is no basis for jurisdiction." *Wheeler v. St. Louis Sw. Ry.*, 90 F.3d 327, 329 (8th Cir. 1996) (citation omitted). It is the burden of the party asserting jurisdiction to prove by a preponderance of the evidence that jurisdiction exists. *V S Ltd. P'ship v. Dep't of Hous. and Urban Dev.*, 235 F.3d 1109, 1112 (8th Cir. 2000).

### B.    Dismissal for Failure to State a Claim Under Fed. R. Civ. P. 12(b)(6)

The purpose of a Rule 12(b)(6) motion to dismiss for failure to state a claim is to test the legal sufficiency of a complaint so as to eliminate those actions "which are fatally flawed in their legal premises and designed to fail, thereby sparing litigants the burden of unnecessary pretrial and trial activity." *Young v. City of St. Charles*, 244 F.3d 623, 627 (8th Cir. 2001) (quoting *Neitzke v. Williams*, 490 U.S. 319, 326-27 (1989)).

In ruling on a motion to dismiss, a court must view the allegations of the complaint in the

light most favorable to the petitioner. *Scheuer v. Rhodes*, 416 U.S. 232 (1974); *Kottschade v. City of Rochester*, 319 F.3d 1038, 1040 (8th Cir. 2003).

      **C.**      **Summary Judgment Under Fed. R. Civ. P. 56**

Pursuant to Rule 56(c), a district court may grant a motion for summary judgment if all of the information before the court demonstrates that "there is no genuine issue as to material fact and the moving party is entitled to judgment as a matter of law." *Poller v. Columbia Broadcasting System, Inc.*, 368 U.S. 464, 467 (1962). The burden is on the moving party. *Mt. Pleasant*, 838 F.2d at 273. After the moving party discharges this burden, the nonmoving party must do more than show that there is some doubt as to the facts. *Matsushita Elec. Industrial Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). Instead, the nonmoving party bears the burden of setting forth specific facts showing that there is sufficient evidence in its favor to allow a jury to return a verdict for it. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986); *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986).

In ruling on a motion for summary judgment, the court must review the facts in a light most favorable to the party opposing the motion and give that party the benefit of any inferences that logically can be drawn from those facts. *Buller v. Buechler*, 706 F.2d 844, 846 (8th Cir. 1983). The court is required to resolve all conflicts of evidence in favor of the nonmoving party. *Robert Johnson Grain Co. v. Chem. Interchange Co.*, 541 F.2d 207, 210 (8th Cir. 1976).

With these principles in mind, the Court turns to the discussion.

**III.**      **Discussion**

Defendants have moved to dismiss or, in the alternative, for summary judgment on the grounds that the Court lacks subject matter jurisdiction to consider plaintiff's claims, and that the

6

USCIS's decision to place an indefinite hold on plaintiff's I-485 application is both discretionary and has not resulted in unreasonable delay. The Court will address the parties' jurisdictional arguments before addressing the merits of this matter.

### A. Motion to Dismiss

Defendants argue that the Immigration and Nationality Act ("INA"), precludes review of plaintiff's claim and that, even if review is not precluded by the INA, the plaintiff cannot otherwise show that this Court has subject matter jurisdiction over his claim.

#### 1. Immigration and Nationality Act, 8 U.S.C. § 1252(g)

Defendants first argue that Section 242(g) of the INA, 8 U.S.C. § 1252(g), precludes judicial review. Section 242's sectional heading is "judicial review of orders of removal," and its subsection (g) states "no court shall have jurisdiction to hear any cause or claim by or on behalf of any alien arising from the decision or action by the Attorney General to commence proceedings, adjudicate cases, or execute removal orders against any alien under the chapter." 8 U.S.C. § 1252(g).

According to the defendants, USCIS's decision to place adjudication of plaintiff's adjustment on hold while it analyzes whether an exemption applies is part of the adjudicatory process, and is governed by Section 1252(g)'s "decision or action . . . to . . . adjudicate cases" clause. Thus, defendants argue, the Court is statutorily barred from reviewing it, citing *Reno v. American-Arab Anti-Discrimination Committee*, 525 U.S. 471, 482 (1999).

This is not the first time the government has argued this point to the Courts. *See Al-Rifahe v. Mayorkas See, e.g.*, *Al-Rifahe v. Mayorkas*, ___ F. Supp. 2d ___, 2011 WL 825668 (D. Minn. Mar. 7, 2011)*; Al Jabari v. Chertoff*, 536 F. Supp. 2d 1029, 1039 (D. Minn. 2008);

7

*Hassane v. Holder*, No. C10–314Z, 2010 WL 2425993, at *3 (W.D. Wash. June 11, 2010); *Sultan v. Roark*, No. 2:09–cv–02158, 2010 WL 1992195, at *3 (E.D. Cal. May 13, 2010); *Khan v. Scharfen*, No. 08–1398, 2009 WL 941574, at *4–5 (N.D.Cal. Apr. 6, 2009); *Sawad v. Frazier*, No. 07–1721, 2007 WL 2973833, at *2 (D. Minn. Oct. 9, 2007), __ F. Supp. 2d __, 2011 WL 825668 (D. Minn. Mar. 7, 2011). Each of those courts held that Section 1252(g) does not bar jurisdiction in this situation pursuant to *Reno*, which held that

> The provision applies only to three discrete actions that the Attorney General may take: her "decision or action" to "commence proceedings, adjudicate cases, or execute removal orders." There are of course many other decisions or actions that may be part of the deportation process — such as the decisions to open an investigation.... It is implausible that the mention of three discrete events along the road to deportation was a shorthand way of referring to all claims arising from deportation proceedings.

525 U.S. at 482. Here, plaintiff's claims do not arise from any of the three discrete actions listed in § 1252(g). They do not arise from a deportation proceeding at all. Rather, plaintiff is a refugee seeking adjudication of his I-485 application to have his status adjusted to that of a permanent resident. "As the Eighth Circuit has already concluded, Section 1252(g) 'has nothing to do' with cases outside the deportation context." *Al-Rifahe*, __ F. Supp. 2d at __, 2011 WL 825668, at *5 (quoting *Sabhari v. Reno*, 197 F.3d 938, 942 (8th Cir. 1999) (quoting *Shah v. Reno*, 184 F.3d 719, 722 (8th Cir.1999))). As the court in *Al-Rifahe* noted, "unsurprisingly, it appears that every court that has addressed the issue has found that section 1252(g) does not bar judicial review of claims of unreasonable delay in adjudicating I-485 applications." __ F. Supp.

2d at __, 2011 WL 825668, at *5 (internal quotations and citations omitted).[1] In view of those precedents, the defendants' jurisdictional argument regarding Section 1252(g) is without merit.

## 2. The Administrative Procedures Act

Plaintiff alleges the following bases for jurisdiction: Mandamus pursuant to 28 U.S.C. §§ 1361 and 1651, and the Administrative Procedures Act ("APA") pursuant to 5 U.S.C. §§ 555 and 706 in conjunction with the federal question statute, 28 U.S.C. § 1331. As discussed below, because this Court has jurisdiction pursuant to the federal question statute and the APA, the Court need not address the plaintiff's other jurisdictional bases.

Although the APA does not provide an independent basis for subject matter jurisdiction, federal courts have jurisdiction under the federal question statute, 28 U.S.C. § 1331, over suits against agencies seeking to enforce provisions of the APA. *Califano v. Sanders*, 430 U.S. 99, 105 (1977); *Sabhari*, 197 F.3d at 943; *see also Al-Rifahe*, __ F. Supp. 2d at __, 2011 WL 825668, at *6. The APA compels agencies "with due regard for the convenience and necessity of the parties or their representatives and within a reasonable time . . . [to] proceed to conclude a matter presented to it." 5 U.S.C. § 555(b). The APA further states that federal courts "shall . . . compel agency action unlawfully withheld or unreasonably delayed." 5 U.S.C. § 706(1).

---

[1] In their reply brief, defendants try to bring plaintiff's case with *Reno*'s ambit by arguing that plaintiff's case involves "deferred action" for which there is executive discretion. However, "deferred action" as discussed in *Reno* refers to a process by which the USCIS uses its prosecutorial discretion not to bring removal proceedings against an otherwise removable alien "for humanitarian reasons or simply for its own convenience." *Reno*, 525 U.S. at 484. Defendants' attempt to recast plaintiff's administrative hold as a deferred action is unavailing because, as *Reno* makes clear, deferred actions pertain to deportation proceedings. Plaintiff's case does not involve a "deferred action," but rather a "systemwide" "indefinite hold," which is governed by internal USCIS memoranda.

However, "a claim under § 706(1) can proceed only where a plaintiff asserts than an agency failed to take a *discrete* agency action that it is *required* to take." *Norton v. S. Utah Wilderness Alliance*, 542 U.S. 55, 64 (2004) (emphasis in original). The APA thus exempts from judicial review claims based on "statutes preclud[ing] judicial review" or "agency action . . . committed to agency discretion by law." 5 U.S.C. § 701(a)(1), (2). Defendants maintain that the USCIS has not made a final decision, so plaintiff cannot validly allege that the agency has rendered its last word. Moreover, the defendants state that the pace of USCIS's adjudication is discretionary, and thus not subject to review under the APA.

That argument has also been rejected by the federal courts. Although the statute that governs refugee adjustment of status applications, 8 U.S.C. § 1159, does not provide a time frame for adjudication, the APA requires that the timeframe for processing applications be "reasonable," 5 U.S.C. § 555(b). "Therefore, [refugees] have a clear, indisputable and nondiscretionary right to an adjudication of their applications within a reasonable time." *Al-Rifahe*, __ F. Supp. 2d at __, 2011 WL 825668, at *6 (quoting *Sawad v. Frazier*, No. 07-1721, 2007 WL 2973833, at *3 (D. Minn. Oct. 9, 2007)). Thus, the government has a non-discretionary duty to act on I-485 applications under the APA, and this Court has subject matter jurisdiction over the plaintiff's claim.

### 3. Due Process Claim

Defendants also move to dismiss plaintiff's claim that he has been denied of due process under the Fifth Amendment to the Constitution.[2] To establish a Fifth Amendment due process

---

[2]Defendants do not cite to Federal Rule of Civil Procedure 12(b)(6), but it seems likely they are arguing that plaintiff has failed to state a claim under Rule 12(b)(6) rather than that the Court lacks subject matter jurisdiction over this claim under Rule 12(b)(1).

violation, plaintiff must demonstrate a protected liberty or property interest, a fundamental procedural error, and prejudice as a result of the error. *Nativi-Gomez v. Ashcroft*, 344 F.3d 805, 808 (8th Cir. 2003); *Lopez v. Heinauer*, 332 F.3d 507, 512 (8th Cir. 2003). Prejudice requires "a showing that the outcome of the proceedings may well have been different had there not been any procedural irregularities." *Camishi v. Holder*, 616 F.3d 883, 886 (8th Cir. 2010). Here, plaintiff contends that the process used by the government to make its initial inadmissibility determination — the denial decision — violated his due process rights. However, the Court's analysis is impeded because it is unclear just what relief plaintiff seeks from this claim, especially now that the denial decision has been vacated.

Defendants assert that plaintiff's due process claim should be dismissed because he has not articulated the deprivation of a protected liberty interest. Indeed, the adjustment of status sought by plaintiff "has been described as 'a power to dispense mercy,' and as 'a matter of administrative grace.' No person has a constitutionally protected liberty interest in such speculative relief." *Nativi-Gomez v. Ashcroft*, 344 F.3d at 808(citing *Achacoso-Sanchez v. INS*, 779 F.2d 1260, 1265 (7th Cir.1985) and *Ameeriar v. INS*, 438 F.2d 1028, 1030 (3d Cir. 1971) (*en banc*)). Plaintiff states, however, that his due process challenge is to the preliminary, non-discretionary, statutory eligibility (or inadmissibility) determination by the USCIS rather than any decision by the Secretaries to grant or deny him a waiver under 8 U.S.C. § 1182(d)(3)(B)(i). Plaintiff specifically alleges that defendants

> are withholding adjudication of plaintiff's refugee adjustment application based on the denial decision even though the denial decision was unsupported by evidence and ultimately vacated. To date, they have failed to adequately explain why they believe INA 212(a)(3)(B) may bar his adjustment. Defendants have ignored evidence presented by plaintiff that INA 212(a)(3)(B) does not apply

11

to his case, and refuse to forward his case to be considered for an exemption under INA § 212(d)(3)(B)(i).

Plaintiff further explains that his due process claim stems from his placement in "immigration limbo," a term used to describe plaintiff's situation in which the USCIS contends he cannot challenge his "inadmissibility" determination, but rather must "indefinitely bear, without recourse, the burdens that come with bare refugee status." *Singh v. Wiles*, No. C07-1151RAJ, 2010 WL 1727973, at *3 (W.D. Wash. April 27, 2010). Plaintiff recognizes that the Secretaries' decision to grant him an exemption under § 1182(d)(3)(B)(I) is not reviewable (except in case of a final order of removal), but here he challenges the inadmissibility decision that caused his application to be denied and then placed on hold. He further states that the defendants made their inadmissibility determination using improper procedures. In addition, plaintiff contends that his resulting Constitutional deprivation includes, among other things, the inability to travel freely.

But despite the so-called procedural violations alleged by plaintiff, neither party advises the Court regarding the degree of due process required for inadmissability determinations. That is, neither party discusses whether those alleged irregularities constitute actionable due process violations. Even if they are due process violations, plaintiff does not ask for separate relief under his due process claim — rather, he asks for a declaratory judgment that the defendants' failure to adjudicate his I-485 application violates the INA, the APA, related regulations, and the Fifth Amendment of the United States Constitution, and he asks for an order requiring the adjudication of his application within 30 days. Although inadmissibility determinations may be reviewable by this Court, *see, e.g.*, *Singh v. Wiles*, 747 F. Supp. 2d 1223 (W.D. Wash. 2010) (holding that organization to which plaintiff gave support was not a terrorist organization and thus plaintiff was improperly designated as inadmissible), the denial decision in which that inadmissibility

determination was made has been vacated. Consequently, as defendants point out, the inadmissibility determination is not "administratively final" because plaintiff's application has not yet been official adjudicated. In any event, it is still unclear what exactly the plaintiff would have this Court do with his due process claim — with no denial decision to review, and with the plaintiff seeking prompt adjudication of his I-485 application in his prayer for relief, the Court appears to be left only with the plaintiff's allegations of unreasonable delay. For that reason, the Court will grant, without prejudice, defendants' motion to dismiss his Due Process claim.

B. **Motions for Summary Judgment**

Because defendants' motion to dismiss will be denied in part, the Court turns to the parties' cross motions for summary judgment. The Court must therefore address the question of whether the government's delay in adjudicating plaintiff's I-485 Application has been reasonable.

To determine whether agency delay is unreasonable and therefore whether APA relief is warranted, several circuits have adopted the six-part test articulated in *Telecommunications Research & Action Ctr. v. FCC*, 750 F.2d 70, 80 (D.C. Cir. 1984) ("*TRAC*"):

> (1) the time agencies take to make decisions must be governed by a rule of reason; (2) where Congress has provided a timetable or other indication of the speed with which it expects the agency to proceed in the enabling statute, that statutory scheme may supply content for this rule of reason; (3) delays that might be reasonable in the sphere of economic regulation are less tolerable when human health and welfare are at stake; (4) the court should consider the effect of expediting delayed action on agency activities of a higher or competing priority; (5) the court should also take into account the nature and extent of the interests prejudiced by delay; and (6) the court need not find any impropriety lurking behind agency lassitude in order to hold that agency action is unreasonably delayed.

*Id.* at 80 (internal citations and quotation marks omitted); *see also Al-Rifahe*, __ F. Supp. 2d at __, 2011 WL 825668, at *7. "In addition to the TRAC factors, the reasonableness of USCIS's delay must also be judged in light of the Government's justifications for the delay in processing Plaintiff's application." *Kashkool v. Chertoff*, 553 F. Supp. 2d 1131, 1145 (D. Ariz. 2008), quoted by *Al-Rifahe*, __ F. Supp. 2d at __, 2011 WL 825668, at *7.

Because plaintiff's application was filed on March 30, 2006, denied on February 26, 2008, and reopened and put on hold on April 26, 2008 (with the denial decision vacated), this Court has two reference points — the date the application was originally filed, and the date the application was reopened and put on hold. Thus plaintiff's application has either been pending five years or three years, depending on which date one chooses. Keeping both those dates in mind, the Court proceeds with its analysis.

### 1. First and Second *TRAC* Factors: "Rule of Reason"

With respect to the first two factors, the APA's general reasonableness standard applies in the absence of a specific timeline. *Al-Rifahe*, __ F. Supp. 2d at __, 2011 WL 825668, at *7. Notably, "although there is no specific statutory time requirement for the USCIS to adjudicate I-485 applications, Congress has set a normative expectation that a reasonable period is 'not later than 180 days after the initial filing of the application.'" *Al Karim v. Holder*, No. 08-cv-671-REB, 2010 WL 1254840, at *3 n.8 (D. Colo. March 29, 2010) (quoting 8 U.S.C. § 1571). *See also Kashkool*, 553 F. Supp. 2d at 1144. However, 8 U.S.C. § 1571 appears to apply generally to "immigration benefit applications," whereas plaintiff's circumstances present a special case.

Indeed, the defendants argue that the delay plaintiff's Application has faced *is* governed by a "rule of reason," which directly results from the policy memoranda that put plaintiff's and

other applications on hold pending an exemption for particular Tier III organizations. It is uncontested that the exemption process is lengthy and particularized. However, the Court is also mindful that other members of the KDPI — who were involved with that "Tier III organization" when plaintiff was — have received exemptions and U.S. citizenship already, while plaintiff waits. In *Al-Rifahe*, the plaintiff's application had been pending 13 years, and his application had similarly been placed on hold because an organization with which he had been affiliated — the Iraqi National Congress ("INC") — met the definition of the Tier III undesignated terrorist organization. *Id.* at *1. The government in that case argued that it was awaiting an exemption for Al-Rifahe personally or the INC as a whole, but a USCIS policy memorandum dated just months before plaintiff filed his lawsuit stated that the Secretary of Homeland Security and Secretary of State had "exercised their authority not to apply the terrorist-related grounds of inadmissibility" for the INC, and thus aliens whose applications had been on hold "may be considered for a discretionary exemption." *Id.* at *2. In that case, the court held that despite that "memorandum lifting the hold on applications by INC members such as Al-Rifahe, his application is nonetheless subject to an indefinite hold, and the government has given no indication of when and whether the hold might be lifted and his application processed." *Id.* at *8. The court also noted that, while it recognized the importance and complexity of the exemption decision, "the fact that the government has not instigated deportation proceedings against Al–Rifahe undercuts its arguments regarding national security concerns; providing material support to a terrorist organization is, after all, a removable offense. *See* 8 U.S.C. § 1227(a)(4)(B)." *Id.*

Of course, in *Al-Rifahe*, the plaintiff proffered evidence --- the memorandum lifting the hold --- suggesting he was entitled to the exemption the defendants argued they were waiting on to justify their delay. Here, although other former KDPI members have been granted exemptions, no such memorandum has been disclosed. Even so, other courts have found that delays allegedly caused by placement on similar holds have been unreasonable, notwithstanding the government's arguments about the exemption process. In *Al Karim*, the court addressed a situation similar to plaintiff's, except there Al Karim had endured an eight-year delay. With respect to the first two *TRAC* factors, that court held that simply because the classification of the plaintiff's affiliated Tier III organization

> may change at some indeterminate point in the future does not justify leaving plaintiff's application in an indefinite state of limbo. Defendants provide no reason why plaintiff's application cannot be adjudicated immediately, subject to future re-opening and review when and if USCIS policies regarding the Dawa party change. Under these circumstances, I simply cannot deem the indefinite delay in this case to be reasonable.

*Al Karim*, 2010 WL 1254840, at *3.

That said, the Court is also mindful that, in cases like these, national security concerns weigh heavily on the "rule of reason" governing the agency's timing. Unlike *Al-Rifahe* and *Al Karim*, plaintiff's application here has been pending only five years.

### 2. Third and Fifth *TRAC* Factors: Interests Prejudiced by Delay

As for the third *TRAC* factor — which overlaps with the fifth factor, *TRAC*, 750 F.2d at 80 — defendants contend that plaintiff is not prejudiced at all, and that in fact he is benefitted by the current adjudication hold because he may benefit from a future exemption. As other courts have recognized, however,

> The indefinite nature of the delay in adjudicating his application has real and not insubstantial effects on plaintiff's life and livelihood, including limitations on his ability to travel, potential negative consequences on his legal status as a refugee, and the financial and bureaucratic burdens of regularly filing travel and work applications. Perhaps most critically, the delay of the final adjudication of plaintiff's application necessarily delays his goal of becoming a U.S. citizen. *See* 8 U.S.C. § 1427(a) (requiring an LPR to have resided continuously in the United States for five years preceding the date of filing a naturalization application); *see also Kashkool*, 553 F. Supp. 2d at 1145 (finding six-year delay in I-485 adjudication unreasonable and noting that the delay's affect on legal immigration status is detrimental to human welfare).

*Al Karim*, 2010 WL 1254840, at *4. The plaintiff here understands that immediate adjudication of his application may result in a denial, but that is apparently a risk he is willing to take. Still, the Court notes that others awaiting adjudication of their I-485 applications have endured delays that have well-exceeded five years.

### 3. Fourth Factor: Effect of Expediting Adjudication

As for the fourth factor, defendants argue that their discretion includes whether, when, how, and at what pace to proceed in adjudicating an I-485 application, and the Court's involvement would intrude on that discretion. Defendants also argue that national security is implicated "due to plaintiff's admitted membership in the KDPI." But, again, as the court in *Al-Rifahe* pointed out, national security has not been so implicated as to call for plaintiff's removal, nor did plaintiff's membership in the KDPI hinder his immigration to this country as a refugee. Defendants suggest that they cannot adjudicate plaintiff's application immediately due to the intensive process involved in determinating whether an exemption is warranted. The defendants' affiant states, for example, that those decisions "are being made at the highest level of DHS, in consultation with the Department of State and the Department of Justice, after careful

consideration of all relevant factors, including any national security or foreign policy implications." Further, plaintiff does not dispute that the exemption process is lengthy and particularized. Finally, the Court notes that the level of discretion given to the Secretaries and the agency by Congress is quite high --- and it has been in flux over the last 10 years.

## IV. Conclusion

Under those circumstances, the Court cannot hold that plaintiff's 5-year delay (or the 3-year hold) is unreasonable. Although other courts have required immediate adjudication of I-485 applications, *see Al Karim*, 2010 WL 1254840, at *5, plaintiff's application has been pending only five years. Other district courts finding for the plaintiff in similar cases have been presented with much longer delays. *See Al Karim*, 2010 WL 1254840 (eight years); *Al-Rifahe*, __ F. Supp. 2d at __, 2011 WL 825668 (13 years). Moreover, in the *Al-Rifahe* case, the delay was especially unreasonable in light of the existence of a memorandum granting an exemption to that plaintiff's Tier III terrorist organization. The Eight Circuit, meanwhile, has upheld a ten-year delay in adjudication (although in that case, the delay could mostly be blamed on a nine- to ten-year application backlog), holding that, even assuming that there is a "reasonable time" requirement for resolving adjustment applications, the plaintiff there had "not established that the delay in this case was unreasonable." *See Debba v. Heinauer*, No 8:08CV304, 2009 WL 146039 (D. Neb. Jan. 20, 2009), *aff'd* 366 Fed. Appx. 696, 2010 WL 521002 (8th Cir. Feb. 16, 2010); *see also Khan v. Scharfen*, No. 08-1398 SC, 2009 WL 941574 (N.D. Cal. Apr. 6, 2009) (holding delay not unreasonable where application was filed in 2003, but hold had only been in place for one year).

The Court acknowledges that other former members of the KDPI have been granted permanent residency and even United States citizenship, and that plaintiff's frustration on that basis is certainly understandable. However, in view of all the other circumstances in the case, especially national security concerns and the high-level, detailed, and discretionary reviews necessitated by exemption determinations under 8 U.S.C. § 1182(d)(3)(B)(i), a three-year delay of adjudication due to the administrative hold is not unreasonable as a matter of law. Therefore, the Court will deny the plaintiff's motion for summary judgment without prejudice to refiling at such time as an unreasonable delay may be shown, and grant the defendants' motion for summary judgment.

Accordingly,

**IT IS HEREBY ORDERED** that defendants' motion to dismiss or, in the alternative, for summary judgment (#15) is **DENIED in part** and **GRANTED in part**.

**IT IS FURTHER ORDERED** that the plaintiff's due process claim is **DISMISSED** without prejudice.

**IT IS FURTHER ORDERED** that the defendant's motion for summary judgment (#15) is **GRANTED**.

**IT IS FINALLY ORDERED** that the plaintiff's motion for summary judgment (#20) is **DENIED** without prejudice.

Dated this   22nd   day of July, 2011.

_____
UNITED STATES DISTRICT JUDGE